**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**In re: ELIZABETH D. RINEHART**         **Case No. 02-90026-DOT**
Debtor                  Chapter 7

**KEITH L. PHILLIPS,  Trustee**
Plaintiff,

v.                           **Adv. Pro. No. 04-03086-DOT**

**ELIZABETH D. RINEHART,**
**STEVE H. TAPSCOTT,** and
**SPORTS SUPPLEMENTS SOUTH, INC.**
Defendants.

## MEMORANDUM OPINION

Trial was held May 25, 2005, on the trustee's amended complaint to

determine extent, validity and priority of the estate's interest in property rights and to

compel turnover of property of the estate. The complaint sought a determination of

the bankruptcy estate's interest in payments due debtor Elizabeth Rinehart from

defendant Steve H. Tapscott or defendant Sports Supplements South, Inc.

Specifically, the trustee seeks to recover sums allegedly due debtor under an

agreement entered into by debtor and Tapscott in connection with their separation and

eventual divorce. The trustee's position is partially justified, and the court will enter

judgment against Tapscott and Sports Supplements for a portion of the amounts

claimed.

## Findings of fact

Debtor and Tapscott were married on August 7, 1993. At that time, debtor was

employed by Sports Supplements, a Virginia corporation wholly owned by Tapscott.

Debtor and Tapscott separated on December 15, 2000. On January 12, 2001, debtor

1

and Tapscott entered into a marital agreement captioned "Agreement and Stipulation

in Accordance with Sections 20-109 and 20-109.1 Code of Virginia, 1950, as

Amended." This agreement was incorporated into the October 10, 2002, final decree

of divorce between the parties.

The marital agreement contained terms relating to both future payments to

debtor and the disposition of the marital property. The relevant terms are outlined

below:

1. The marital home would be sold by listing it with a realtor and following the advice of the realtor. Debtor was to receive $15,000 or 50% of the net proceeds of the sale, whichever was greater. Tapscott was to pay the two notes secured by the home until the sale and was also to hold debtor harmless for any nonpayment on his part. Tapscott was to maintain life insurance on debtor until her obligation on the debts secured by the home was extinguished.

2. Debtor waived any interest in Sports Supplements and Tapscott was to remove her name as director. In the event that the company was sold, debtor would receive 15% of the gross sales price, less a proportionate share of the corporate liabilities. If debtor were deceased at the time of the sale, the couple's daughter would receive debtor's share of the sales proceeds.

3. Sports Supplements was to pay debtor $600.00 a week, which would be reduced to $250.00 a week when debtor obtained new employment. This $250.00 per week would continue until the couple's daughter attained the age of 18. At that time, the amount would be increased to $400.00 per week.  Tapscott personally guaranteed the payments of Sports Supplements, but any payments that he might make pursuant to that guaranty would be deemed to be spousal support.

4. The PT Cruiser owned by the couple was to be retained by Tapscott and debtor's name was to be removed from the note and title within 90 days. Debtor agreed to execute whatever documentation was necessary to put the car in the name of Tapscott solely.

5. A Corvette automobile was to be sold and the proceeds used to purchase a 2000 Ford Explorer or similar vehicle for debtor, up to a cost of $24,200.00. Any difference between the sales price of the Corvette and the maximum purchase price of the Explorer was to be provided by Tapscott.

2

6.       If either party were to file bankruptcy, the divorce case might be
         reopened and a petition made for a specific award of spousal
         support.

7.       The agreement contained the provision that "[t]he Wife
         acknowledges that the foregoing provisions for her, together with
         her anticipated income from other sources will provide for her
         support and maintenance and that the foregoing, considering all of
         the Wife's circumstances, is fair, adequate and satisfactory to her
         and is in the keeping with her accustomed standard of living and her
         reasonable requirements, giving consideration to her own ability to
         provide for her own support." Both parties waived all claims for
         support, maintenance or lump sum settlement.

8.       Damages to either party caused by the other party's breach of the
         agreement would be subject to indemnification by the breaching
         party.

Additional findings of fact are stated below.

### Discussion and Conclusions of Law

On November 18, 2002, debtor filed a chapter 7 bankruptcy petition. On May

25, 2004, the trustee initiated this adversary proceeding, seeking a determination of

the extent, validity and priority of the estate's interest in sums due debtor from

Tapscott and Sports Supplements pursuant to the marital agreement. The trustee

argues that his powers under the bankruptcy code allow him to recover, for the

benefit of the bankruptcy estate, all amounts due debtor from Tapscott or Sports

Supplements. In making a determination in this case, the court will first address the

issue of what types of debt the trustee may recover for the benefit of the estate and

will then turn to the specific claims of debtor, Tapscott and Sports Supplements.

Trustee's right to recovery.

The parties do not dispute the claim of the trustee to whatever amounts may

be awarded against Tapscott as a result of prepetition violations of the marital

agreement. Likewise, the parties do not dispute that all pre-petition arrearages of the

3

weekly payments due from Sports Supplements or Tapscott are part of the bankruptcy

estate. However, the parties dispute the trustee's right to recover amounts due to

debtor because of the failure of Tapscott and Sports Supplements to make the

required weekly payments in the 180 day period after the filing of debtor's

bankruptcy petition.

At the conclusion of trial, the court ruled from the bench that the weekly

obligations owed to debtor pursuant to the marital agreement were in the nature of

alimony and support and were not in the nature of a property settlement.   In reaching

this determination, the court was persuaded by the fact that the weekly payments due

were calibrated so as to provide debtor ample support, and the payments would be

adjusted with the change of circumstances in debtor's life. The agreement in fact

contains language that "[t]he Wife acknowledges that the foregoing provisions for

her, together with her anticipated income from other sources will provide for her

support and maintenance and that the foregoing, considering all of the Wife's

circumstances, is fair, adequate and satisfactory to her and is in the keeping with her

accustomed standard of living and her reasonable requirements, giving consideration

to her own ability to provide for her own support." Further evidence of the fact that

the weekly payments were intended as support is found in the marital contract

provision that if Sports Supplements did not make a payment and Tapscott were

forced to make it, the payment would be considered spousal support. Similar analysis

leads to the conclusion that the insurance payments that were to have been made

through Sports Supplements were in the nature of alimony and support as well.

Having established that the periodic payments were in the nature of alimony

and support and not in the nature of a property settlement, the court must ascertain

whether the payments are properly included in the bankruptcy estate. The trustee

argues that pursuant to the provisions of § 541(a)(5)(B), payments that became due

and payable in the 180 day period after the bankruptcy filing become part of the

bankruptcy estate. The trustee bases his right to recovery upon § 541(a)(5)(B) of the

bankruptcy code, which provides that property of the estate includes

> "any interest in property that would have been property of the estate if such
> interest had been an interest of the debtor on the date of the filing of the
> petition, and that the debtor acquires or becomes entitled to acquire within 180
> days after such date – (B) as a result of a property settlement agreement with
> the debtor's spouse, or of an interlocutory or final divorce decree;…."

11 U.S.C. § 541(a)(5)(B). [1]  Therefore, the issue before the court is whether the

alimony payments that became due and owing in the 180 days after the filing of

debtor's bankruptcy petition are property interests includible in debtor's bankruptcy

estate and recoverable by the trustee or whether those payments are more in the

nature of income earned post-petition that is property of the debtor and is not

recoverable by the trustee.

The issue of whether post-petition support payments should be included in the

bankruptcy estate pursuant to § 541(a)(5)(B) has not been addressed by the Fourth

Circuit and indeed has been addressed by few courts. However, the case of Peters v.

Wise (In re Wise), 346 F.3d 1239 (10th Cir. 2004), shows a balanced and reasoned

analysis of the issue.

---

[1] Section 542 of the bankruptcy code provides that "an entity that owes a debt that is
property of the estate…shall pay such debt to, or on the order of, the trustee, except to
the extent that such debt may be offset …against a claim against the debtor."

In making its determination that awards of spousal support accruing during the 180 days after the filing of a petition are properly included in a bankruptcy estate, the Tenth Circuit looked at the language of the statute and concluded that the first inquiry must be whether the debtor had a property interest in the payment under state law. The court found that under Colorado law, the right to payment of maintenance is a personal statutory right and not a property right. Id. at 1242. Having determined that the right to alimony was not "an interest in property" addressed in § 541(a)(5)(B), the court refused to reach out to include rights to post-petition alimony in the bankruptcy estate. Further, the court found that the plain language of the statute leads to the conclusion that "Congress acted intentionally and purposefully in excluding spousal maintenance or alimony from the statutory language. If Congress had intended for the provision to reach maintenance awards, it would have specifically included language to that effect." Id. at 1243 (citations omitted).[2]

The analysis of the Tenth Circuit is persuasive. In attempting to ascertain whether the right to alimony or support is an "interest in property" under Virginia law, the court has been unable to locate dispositive Virginia authority. The court does note the decision of the United States Supreme Court in United States v. Davis, 370 U.S. 65 (1962), in which the Court analyzed the tax consequences of the transfer of property pursuant to a divorce settlement. In the course of its analysis, the Court remarked that in "the present context the rights of succession and reasonable share do not differ significantly from the husband's obligations of support and alimony. They

_____

[2] Other courts addressing this same issue have made similar determinations. See, e.g., Jeter v. Jeter (In re Jeter), 257 B.R. 907 (B.A.P. 8th Cir. 2001); In Re Peterson, 280 B.R. 886 (Bankr. S.D. Ala. 2001).

all partake more of a personal liability of the husband than a property interest of the

wife." Id. at 70.

However, the outcome of the inquiry into Virginia law on the nature of

property interests in alimony or support is not critical because the statutory

construction analysis utilized by the Tenth Circuit in Wise is dispositive of the issue.

As noted by the Tenth Circuit, if the legislature had meant the provisions of §

541(a)(5)(B) to apply to awards of alimony and support, it would have said so clearly.

Rather, the language specifically includes only "property settlements." Thus, post-

petition spousal support payments unmatured on the date of the filing of the petition

are not property of the estate and are not recoverable by the trustee under §

541(a)(5)(B). Rather, they are in the nature of income earned after the filing of the

petition, which is not properly included in a chapter 7 bankruptcy estate.

Having ascertained the trustee's right to claim the prepetition amounts due

debtor from Tapscott or Sports Supplements, the next task is to assess the claims of

the debtor, Tapscott, and Sports Supplements against each other.

Claims of debtor against Tapscott.

The trustee argues that debtor is owed prepetition payments provided for in

the marital agreement and itemized by debtor. Tapscott and Sports Supplements

dispute the amount claimed, asserting that the amount should be reduced to $250.00

per week as of July 13, 2001, because at that time debtor had gained full-time

employment as a dog breeder, which would have extinguished her right to payment of

healthcare premiums under the marital agreement. However, there is scant evidence

that in fact debtor was gainfully employed as a dog breeder. The evidence shows that

7

debtor did not gain full-time employment until August, 2002, as is evidenced by the

difference between debtor's gross income in 2001 and 2002 and by the multiple

employers who provided debtor with 1099 statements for 2001. Additionally, debtor's

2001 federal tax return shows only $2550.00 as income from self-employment during

that year.

The trustee is thus correct in his assertion that the monthly amount due under

the marital agreement should not have been reduced to $250.00 per week until August

2002.  The payments, either paid or estimated, due from July 13, 2001 to August

2002, were deficient by the sum of $350.00 per week.  Tapscott and Sports

Supplements have not shown that the amount due prepetition was other than the

$41,900.00 claimed by debtor.

In addition to the periodic payments due under the marital agreement, the

trustee cites other breaches entitling debtor to relief from Tapscott only. Specifically,

he claims $24,200.00 because Tapscott did not provide debtor with a replacement

vehicle, as required by the marital agreement, and debtor was then forced to purchase

her own vehicle.

In contravention of the terms of the marital agreement, Tapscott failed to sell

the Corvette to facilitate his purchase of a vehicle for debtor and never provided her

with a vehicle free and clear of liens. Tapscott does not defend his failure to sell the

Corvette, but instead he asserts that the failure of debtor timely to sign over the title to

the PT Cruiser was a breach of the marital agreement. He argues that this was the

cause of his inability to purchase the Ford Explorer free and clear of liens for delivery

to debtor. However, the marital agreement is clear that the Corvette was to be sold

8

and the proceeds used to purchase a vehicle for debtor. Debtor's untimely execution of the title to the PT Cruiser does not excuse, nor did it cause, Tapscott's failure to sell the Corvette and deliver a vehicle to debtor. Rather, the evidence indicates that Tapscott chose not to consummate a sale on the PT Cruiser because it would have resulted in a deficiency on the note secured by the vehicle. Tapscott instead financed a vehicle and provided it to debtor. Thus, Tapscott is indebted for the $24,200.00 amount contained in the marital agreement.[3]

In addition, the trustee claims $ 2,092.80 in expenses for a rental car debtor was forced to obtain when Tapscott seized the encumbered vehicle he had provided to debtor. Tapscott defends his actions in taking the car by asserting that debtor had refused to have the car titled in her name or to provide insurance on it. However, the marital agreement provides that a vehicle would be provided to debtor by Tapscott, and the provisions for the sale of the Corvette and the maximum price stated in the agreement indicate that the parties clearly intended for the car provided for debtor to be paid for and not subject to any encumbrance. Therefore, while debtor may or may not have been justified in refusing to have the car placed in her name, the fact remains that Tapscott was required by the marital agreement to provide a vehicle for debtor, and his reclaiming of the Explorer for a period of several weeks thus breached the marital agreement. Further, the issue of insurance on the vehicle was not a term of the marital agreement and cannot be asserted by Tapscott as an event of breach on the part of debtor.

---

[3] Debtor testified that she eventually purchased her own 2001 Ford Explorer for $26-27,000.00.

9

Finally, the trustee claims $ 1,756.85 due for health insurance premiums

unpaid by Tapscott prior to the entry of the final decree of divorce. Tapscott disputes

the health insurance amount due debtor from him by raising the issue of debtor's

alleged full-time employment as a dog breeder, which would have extinguished her

right to the payment of healthcare premiums under the marital agreement. However,

that issue has already been addressed in the discussion of the calculation of weekly

amounts due under the marital agreement, and Tapscott's assertion has been found to

be groundless. Thus, Tapscott remains liable for the health insurance purchased by

debtor.

Tapscott's claims to setoff.

Having addressed debtor's claims under the marital agreement, the court now

turns to the issue of setoff. Tapscott claims that he has incurred substantial damages

because of debtor's failure to perform under the marital agreement, and he argues that

those damages should be deducted from any amount due to debtor from him pursuant

to the marital agreement.

 A. First, Tapscott asserts that he ceased to make the mortgage payments on

the marital residence, thus causing the house to be foreclosed upon, because debtor

did not cooperate in the marketing of the property. An exhibit submitted by the

trustee in which Tapscott outlined his claims to damages contained the following

notation: "7/02 House forclosed [sic] and credit now fouled up. Had sale of

house…for $290,000 on 5/02 but Eliz wanted $3000 Dwn for rent of house til closing

as well as $3000 per month rent so people said no…." He argues that he was forced to

expend $31,000.00 in additional mortgage payments that he would not have had to

10

make had debtor cooperated in the sale of the residence. He further alleges that the

foreclosure sale of the residence brought $50,000,00 less than it would have brought

had it been sold other than at foreclosure.

However, Tapscott has provided no proof of this beyond his conclusory

assertions. He has provided no proof of the value of the residence at various relevant

time periods and sparse documentation of the listing history of the residence. He also

asserts that debtor's lack of cooperation in facilitating a sale of the residence caused

him to return to state court for a remedy, but he has submitted no proof of that and no

proof of his costs in relation to the state court action. Most persuasive is the fact that

the foreclosure took place only two months after the unsuccessful offer and

negotiations relative thereto, but Tapscott had ceased to pay the mortgage in January

2002, four months prior. The actual cause of the foreclosure was the action of

Tapscott in discontinuing the mortgage payments. Therefore, any diminution, proven

or unproven, in the value of the residence, should be borne by Tapscott.[4] Further, any

mortgage payments made by Tapscott are not recoverable because those payments

were required by the marital agreement until the property was sold, not until Tapscott

decided to discontinue them.

B. Tapscott is not entitled to any offsets related to any failure of debtor to sign

over the title to the PT Cruiser. Tapscott admitted that he did not sell the vehicle

---

[4] The court additionally notes that there is no evidence as to the actual
foreclosure price of the residence. In particular, there is no evidence that the
foreclosure price was less than the $290.000.00 price. The proposed "Estimate of
Seller's Settlement Charges" prepared in connection with the unsuccessful
$290,000.00 offer on the residence shows that the estimated payoff of the mortgage
was between $359,000.00 and $373,000.00. A foreclosure notice from Bank of
America stated the debt as $371,896.33 on June 13, 2002.

because none of the offers he received would have paid the note secured by the

vehicle in full. There was no evidence that debtor's failure to sign over title caused

the losses alleged by Tapscott as damages, but rather the evidence indicates that no

sale was consummated because it would have resulted in a deficiency on the note.

There is no evidence that Tapscott was unable to sell the vehicle solely because

debtor failed to endorse the title.

C. Tapscott is not entitled to an offset for the insurance paid on the Ford

Explorer that he provided to debtor. He was the owner of the vehicle, it was subject to

a lien, and the insurance was necessary to protect him as owner. There is no evidence

that debtor requested Tapscott to provide the insurance, and providing insurance was

not required of either party by the marital agreement.[5]

D. Tapscott is not entitled to an offset for any loss from the sale of the Ford

Explorer he provided to debtor. He was required to provide a vehicle to debtor

pursuant to the terms of the marital agreement. He did not comply with the terms or

the spirit of the agreement; instead of selling the Corvette and using the funds from

the sale to purchase a vehicle for debtor, he purchased and financed the Explorer,

presenting it to debtor subject to a lien. Having presented it to debtor, however,

Tapscott was certainly not entitled to repossess it at any time he desired and leave

debtor without transportation, and he certainly was not entitled to claim damages to

the vehicle resulting from any repossession.

---

[5] The silence of the marital agreement as to the issue of insurance on the
vehicle is further evidence that the parties intended for debtor to hold the vehicle
provided by Tapscott free and clear of liens or any other interests.

E. Tapscott is not entitled to the attorney's fees of Judson Collier because

Tapscott admitted that the $10,000.00 in fees claimed represented the entire amount

paid by Tapscott in connection with his divorce from debtor, not just the fees related

to any alleged breach of the marital agreement. There is no allocation of expenses to

any alleged breach of the marital agreement. Further, there was no evidence presented

at hearing of either the actual amount or the reasonableness of the attorneys' fees.

F. Tapscott is not entitled to an offset for the fees paid to David Robinson,

because those fees are not related to any alleged breach of the marital agreement but

instead relate to allegations that debtor unlawfully removed monies from Sports

Supplements during her employment there. Further, there was no evidence presented

as to the amount of those fees.

G. Finally, Tapscott claims that he should be able to offset the costs of a

refrigerator, freezer, washer, dryer and vinyl fencing taken from the residence by

debtor. However, there has been no evidence offered that will prove the value of

those items. The values cited by Tapscott are the purchase prices of the items, and

those values are inappropriate given that the items were several years old when taken

by debtor. In the absence of proof, the claim to offset fails.

## Conclusion

In summary, the trustee has a valid claim to all damages asserted except those

periodic payments that accrued and became due and owing in the 180 days after

debtor filed her bankruptcy petition. The right to collect those post-petition weekly

payments belongs to debtor, and it is not property of the estate. Tapscott and Sports

Supplements are responsible for the weekly payments due to debtor prepetition.

Likewise, Tapscott and Sports Supplements are responsible for the payment of the

health insurance premiums up until debtor's attaining full-time employment in

August 2002.  Tapscott alone is responsible for the damages arising from his breach

of the marital agreement with respect to the provision of a car to debtor, including

payment of rental car expenses. Any claim by Tapscott or Sports Supplements to a

setoff against the amounts due and owing from them to debtor is denied.

     A separate order will be entered.

Signed_____

        /s/ Douglas O. Tice Jr.

        _____

        DOUGLAS O. TICE JR.
        CHIEF JUDGE
        UNITED STATES BANKRUPTCY COURT

Copies to:

**Jennifer J. West, Esq.**
**Timothy G. Moore, Esq.**
**Robert H. Chappell, III, Esq.**
Spotts Fain PC
P.O. Box 1555
Richmond, VA 23218-1555
Attorneys for Trustee

**John Randolph Smith, Esq.**
Smith & Wells, P.C.
1330 Alverser Plaza
Richmond, VA 23113
Attorney for Defendant Elizabeth Dora Rinehart

**Robert A. Canfield, Esq.**
Canfield, Baer, Heller & Johnston, LLP
2201 Libbie Ave., Suite 200
Richmond, VA 23230

Attorney for Defendant Steve H. Tapscott

**Michael J. Champlin, Esq.**
Bowen, Champlin, Carr Foreman & Rockech
1919 Huguenot Rd., Suite 300
Richmond, VA 23235-4321
Attorney for Defendant Sports Supplements South, Inc.